And the next case on the docket is Doral 10 v. City of Doral and Thomas Robertson is here for Doral 10. Lewis Reinstein is here for the City of Doral and Mr. Robertson, you may begin with your argument. Thank you, your honor. If it pleases the court, my name is Tom Robertson from the firm of Raquel Riddell Fernandez Larkin Tapinas. I'm here on behalf of Doral 10 in this appeal. What we're appealing is the dismissal of the complaint below in a classic takings case that is, in my opinion, has all of the facts needed to have been alleged in the complaint. Is this a takings case or a due process claim? It's a due process claim that evolves from a taking and because the due process is not properly, it affects the taking. The only thing wrong with the complaint as it's drawn is that nowhere does it say taking without just compensation, yet in the body of it, it does say there's been a denial of just compensation and where there's been no process before taking the property, it certainly is a denial of due process. Counsel, this was litigated below and I think this is the tenor of Judge Wilson's question because it's mine too. This seemed to be litigated below as a takings case. It was understood as a takings case and then we get to someone arguing something completely different than the district court. I have to say, when you're a trial court judge and you watch these appellate arguments and then they start talking about something that's completely different than you litigated below, it's head-scratching. What do we do when you have one claim that was litigated and understood, a Fifth Amendment takings claim, which you're right, I agree with you, this is a classic takings case. And then here, we're now talking about a Fourteenth Amendment due process claim, which is different, has different elements and different requirements. What do we do with that? Because how you couch the claim, the issue is whether or not there's a plausible claim below, whether or not there was sufficient facts in the complaint to plausibly set forth a claim of any constitutional violation. And there's very clearly constitutional violations here. There's been a We rely on, the way this works is a claim is alleged, there's a motion to dismiss, the district court rules on it. And then when it gets to us, we argue for counsel to point out errors to us, specific errors, in which we are to look at those specific errors to see if the district court erred or not. But if we're presented with a completely different claim than the one that's down there, it's not for us to say, well, you could have, or we could cobble this together or not. That's not really the standard by which we judge these things. We're required to review it in the same way that the district court was presented with it, aren't we? Judge, if you look at it as a due process claim, it's very clear that there was no process before they occupied this property and caused severe damages. And so there has been a clear due process violation. That due process violation is the result of a take and contained in the complaint and contained in the argument before this court are all the allegations that would be necessary for a taking and a due process violation based on that taking. The fact that they occupied the property, became aware of the fact that they were occupying the property, hid the fact that they were occupying the property. At the point where the county, excuse me, the city manager became aware of the fact that they were occupying the property, there could have been process done at that point, notify the owners. They could have notified the owners and allowed them to make, take whatever steps were necessary, gone to the city commission, but they did not. They continued to hide the existence of the fact that they're using this property. And during the course of using it, they excavated material and then took some of that material off site and used some of that material to mix with contaminated material in order to then backfill into the same property. So we're, we're in the complaint that we have factual allegations that support a policy practice or custom of a city that caused the constitutional violation. That's, that's really the crux of the issue on appeal. Well, judge, in your decisions, both in Griffin and Hoffling, this court has said that where the decision maker, and that would be the city manager in this case, becomes aware of, or, and does not take action, that becomes a customer policy. In Griffin, you said that the failure to correct... The city manager here, I think it's Mr. Rojas, he's not, he's not the final policymaker for the city of Doral. The city council is the The city council is exactly the final decision maker in the decision whether or not to issue the contracts for this. Once the contract is issued, the management of the contract within the terms of it is completely up to the, to the city manager. And where do you, where... That's not what the city's code says. The city code specifically states that the city manager's documents on behalf of the city must be authorized by the council. Correct. That's the execution of the contract, judge. We're talking once the contract is executed, meaning signed, the, the city manager is the person who manages the contract. And we're talking about the management of the contract, not the issuance of the contract here. The city manager, once a contract is issued and approved by the city commission, is the decision maker in terms of how to manage that. He is the one that approves payrolls. He is the one that... What's the basis for that in this record? Judge, I think that it's very... How have you alleged that in your complaint? Judge, we've, we've alleged as a fact that he is the decision maker. How he is the decision maker is, you know, it's plausible. There's certain plausibility in alleging that he is the decision maker in showing that once the contract has been issued, and there's nothing in the city code that's, that's contrary to that. Once the contract has been executed and issued, it is up to the manager to manage it. That's the purpose of the city manager, is to run the day-to-day operation of the city. And that is encompassed in the city code. And we alleged that the city manager is the final decision maker with respect to these types of decisions. He would not be the final decision maker in terms of whether or not to issue the contract. But once issued, he is the final decision maker in terms of how to manage it within the terms. And that is exactly what he did. And he, in, below in the argument, they admitted that the city manager was aware that they were on this property and they were using it illegally. And to correct that, they need no steps to try to offer some sort of process. They've done nothing other than to continue to conceal. And so as a result, we are, my client has a piece of property that continues to have an occupation by the city in terms of contaminated material that is on the property. There's material that was excavated and removed from the property that was, concrete barriers that have been removed from the property. All of these done with the city's final decision-making person's knowledge of it. This court has previously approved the fact that under circumstances, the Doral city manager is in fact the final decision maker. In the Trigo versus city of Doral case, the lower court made a specific finding that the city manager is the final decision maker for hiring and firing. What we're saying is the same is true for the management of a contract. And this court- Don't you need an allegation though in your complaint? To demonstrate that Mr. Rowhouse's action did not require any further action from the governing board? Judge, I think that, you know, in Trigo, it's considered an undisputed fact that the mayor is the final decision maker. Do I need to go beyond that? Is it plausible? But by saying he is the final decision maker and looking at the law in the terms of what does the city do? He manages contracts. I think it's been adequately alleged at least to a plausibility standpoint. And that's the standard that the Supreme Court has announced. And that's the standard that this court has used. It is plausible that based on the allegation that he is the- It's not just approval though. It's approval of a decision. Normally it's a subordinate. In this case, it's a contractor that's working for the city. But that decision itself has to be a policy if it's approved or ratified by the decision maker, right? In other words, this isn't- We're not talking about single one-off acts here, which is what this seems to be. We're talking about a policy, as you point out, to deprive someone of their due process rights in taking property. Where is that policy that's referred to? This contractor was involved with one particular road project and violated the rights allegedly of one particular party. How is that a policy of the city to deprive all homeowners of their takings in these sorts of situations? Judge, I don't think you need to go to that extent. I think if you look at the Griffin versus City of Opa-Locka case, the failure to correct, keep in mind that as soon as the manager knew about this, he could have taken steps to correct it and did not. And so it became a policy, at least with respect to this particular location. There's no doubt that a failure correct theory for a final decision maker can be. But again, it has to be an underlying decision that sets a policy and the manager has to agree or the final decision maker has to agree with the basis of that decision. That's what the case law says. And I guess what I'm having here is separating a one-off constitutional violation, which happens, which we've said time and time again, a city is not necessarily liable for, absent a policy, and a policy of depriving someone. Where's the ordinance? Where's the written memo saying this is the way we're going to do things? Where's the multiple times that the same exact thing has happened as alleged in a complaint? Well, Judge, in Griffith, you actually asked those questions and said, in situations such as that, the raping of a person, no, there is no policy, but they didn't take the steps to correct it. A one-off can be a policy where they ignore it and don't correct it. This is a situation where this is not, oh, they did something and that was it. They did it and they continued it and they continued it and they continued it. It's a continuous action. It's not a one-off, Judge. It's for months. And they complicated it by then excavating and removing. And all of this is set forth in the daily reports of BB&C, excuse me, BC&C, and given to the city. So the city on a daily basis knew it was in the wrong place on another person's people property that it was mixing contaminated material. This is not a single one-off. This is an ongoing event that took a great deal of time, covered an extent, and that the manager had the ability initially to stop. Because there was the existence of a letter of intent, they all assumed they owned it and treated it like they owned it. And the manager continued to allow that. It's not a single event. It extends for the entire project. The material was there. It's hard to say that there's anything other than an event that was of longstanding. Does that become a policy? I think so. If the manager on the first day had said, what are you doing? Get the heck out of there. Yes, maybe it's a one-off. But the next day, the next day, and then he finds out they're excavating material and using it. Then he finds out they're excavating material, bringing on contaminated material. We're talking about multiple, and he approves it every time, every time, every time, every time. Judge, if there's no more questions, I see that my time is up. I'll reserve the remainder of my time for rebuttal. All right. Thank you. We'll hear from Mr. Reinstein. Thank you. Good morning. Louis Reinstein on behalf of the Appalachian City of Doral. If you may please the court. The district court got it right when it concluded that Doral tends an amended complaint for general and conclusory. District court cited to Oxford Asset Management and held that conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal. The ruling was consistent with Twombly and Iqbal and holding that more than labels and conclusions and a formulaic recitation of the elements of a action will not do. These general pleading cases support the city, but so does Hefling v. City of Miami, a case out of this circuit, which is also cited by Doral 10, which also supports us. In Hefling, the court held that the touchstone of a 1983 action against a governing body is an allegation that an official policy is responsible for a deprivation of civil rights protected by constitution. In addition, in the initial brief, Doral 10 also quotes from Odin, which quotes Hefling for the principle that they are arguing must be followed and they say, in quotes, municipal liability under section 1983 obtains only where the municipality has officially sanctioned or ordered the constitutional violations at issue. That's in their brief, page 16 of 29. Doesn't the complaint counsel, doesn't the complaint here say that the city manager, who is a final policymaker, and assume for the moment that he is, and I'll ask you about that in a minute, but that a final policymaker authorized exactly what happened here for the contractor to do? So yes, your honor, there are some basic allegations which are nothing but conclusory and don't support. That's not conclusory. The allegation is the contractor went on the property, took fill, mixed in bad fill with good fill, and it says that they authorized it. That's not, that doesn't seem conclusory to me. Well, your honor, what it does, what it does, what is missing though, and this is from Hefling, is that even in that case where they were discussing whether you even have to name the final policymaker as opposed to just say there is a final policymaker. In Hefling, the court said, and I quote, all he needed to do was of the city, which caused the seizure and destruction, and in that case, it was a sailboat. In our case, while they do name a final policymaker, they still don't allege a policy practice or custom, and that's what the court below said was its finding and what's missing throughout this case. As we're here, your honor, on a motion to dismiss, I actually want to point Well, then, you know, just respond to Mr. Robertson's argument that although this is really an ongoing event, it was not a single event. This is something that had been happening over a period of time. Why isn't that sufficient to bring this within a practice or, you know, a practice on the part of the city? So, counsel makes good arguments in the briefs and here, although it's not in the pleadings, so that although there are statements about what the contractors are doing and there are statements about what is being done on the property, there is nothing that sets forth as to what the final policymaker did throughout on number of times and then it was approved. So, we still have this missing piece as to whether or not the final policymaker needed approval, gained approval, and we haven't even got into the issue that is tied in. The complaint says that he authorized it. There's no question, your honor, that there are individual references that either Childress or authorized the conduct described. However, none of that information is significant enough to overcome Iqbal and Fomley where it's just reciting the elements of the causes of action and aren't getting beyond that. I guess my question is what more were they supposed to do because this is not a generic boilerplate complaint. I mean, Rojas personally participated and authorized the conduct describing the complaint and it goes into detail as to what the conduct was. So, what more did they need to do? I mean, I understand that we don't do notice pleading anymore, but I'm not sure what else could have been done. Thank you, Justice Lugo. So, if we look to paragraphs 97 and 108 in the amended complaint, they say the city enforced a practice in custom, yet they fail to show it. So, in paragraphs 98 and 109, they then say the practice in custom was authorized by policymakers within the city and it was a widespread practice, so permanent, widespread, and well settled as to constitute a customer usage with the force of law. So, the plaintiff is the master of the complaint and they are saying that the actions by the city are policy, well settled, and permanent, and widespread. So, we understand that the language that they are putting in those paragraphs is attempting to track Monell and his progeny. There's no doubt that that's conclusory counsel. I don't think anyone can doubt that, but what and so you're referring to the actual counts themselves, but there are at least, I count, 93 paragraphs and I think two pages that are unnumbered paragraphs of factual allegations here that clearly show that the contractor entered the property without consent or permission, knew they didn't have or should have known they didn't have consent or permission, and done with the authorization of the city. Why is that not a seizure of the property under the So, those allegations, Judge Luck, which you just referenced where they're talking about what the contractor did, in no time are we told what was personally authorized or even ratified by Rojas or Childress. It's page 21, paragraph 99 of the complaint. Rojas and or Childress were aware and either personally authorized or ratified the alleged constitutional violations by the city, its employees, and the private defendants. And paragraph 99, which is right in front of me, your honor, and I see that, although again, is that these are just trying to cite the elements without actually identifying the factual allegations supporting these conclusions. If someone personally authorized something, I'm not sure what more that doesn't seem to be tracking or conclusory. That's just a fact that's alleged. You authorized it. I said you can do this personally. I'm just having a hard time seeing how that's conclusory. Where I do agree with you, the paragraph you read does sort of just track what, you know, the Monell says without any factual meat behind it. And I think paragraph 99 has to be taken in conjunction with those paragraphs right above it, which are paragraphs 97 and 98, is that they're trying to proceed under one cause of action where they're saying that it's a practice and custom and a widespread practice. And then this was authorized or ratified. Yet there's nothing that points back to what Rojas and or Childress, even if they are final policymakers, which we don't agree that they are, that supports the widespread practice argument. And that's still... Your opposing counsel says that as to entering into the contract, the city council, of course, is the final policymaker. But once the city makes the policy decision to build the road and to enter into this property contract to go forward and to hire the contractor, the day-to-day management of that is done by the city manager. Is that not correct? The facts that are pled here is that day-to-day is done by the contractors and the city manager in this case, there's no... Under the authority and approval of the city manager, right? Only after the city finally approves it. So that the city manager, the cases that are cited by the other side, as well as what's in their brief, which is not in the pleadings, is that in this case, the city manager may be a final policymaker as to employment contracts, but there's nothing in this case that supports that he's the final policymaker as to the contract itself. So maybe as to employment situations, which would be similar to the case of Griffin that was cited. I'm talking as a matter of law here for a moment. As a matter of law, this is a manager-run city. It's not a mayor-run city, right? It's a mayor-manager relationship, Your Honor. The mayor is the head of the council. The manager runs the day-to-day operations of the city, right? With consent of the city and with exceptions that are set out in the code, Your Honor. Right. So, I mean, the city is not... The council and the mayor aren't deciding the day-to-day of the contractor is going to start digging here and taking fill from there. That doesn't reach the council level. Those are manager decisions, right? In that example, you still would need... In that example, that's more of a ratification than a final policymaker. Once... I mean, counsel, I mean, you're arguing with two judges who understand Florida law here in terms of how the city and municipalities work in Florida. So... I'm from Florida, too. And Judge Wilson as well is from Florida, too. But let's not... You and I, everyone here knows that once the mayor and the city council or the commission, if we're talking about the county, once they approve something and it's a contract, they don't see it again. It goes to the city manager and they're the ones that deal with the operation of that contract. Correct? Yes, Your Honor. I didn't mean to... So, let's not bluster something that's not accurate. So, I think the greater question I have on that issue, and there's nothing Judge Lugo has said that can be disputed, is the final policymaker decision a finding of a matter of fact for us as alleged in the complaint, or is it a matter of law under Florida law? That really is the question. Because if it's a matter of law under Florida law, all we have to do is look at the city code and the statutes about this. But if it's a matter of fact, then we have to look at the complaint. So, that's my question for you, is which is it? The decision of whether someone is a final policymaker, is that a legal decision or a factual decision? Your Honor, I believe that it is a legal decision, although we're still limited by what's pled in the amended complaint in terms of the role and what they're alleging that the final policymaker did or didn't do, and in terms of whether or not there's a policy practice or custom that occurred. So, I think that in this case, I still look back and point out to this court, Hefling, is that the court said that he still, even when the final policymaker did make a decision, was determined as a matter of law, that he still needed to allege a policy practice or custom, which caused the evented issue. And that's what's missing from the pleadings. As plaintiff is the master of the complaint, at no time was there a motion to amend. The district court properly dismissed as they found that there were insufficient factual allegations to support the ratification argument. This would require facts that the final policymaker authorized or approved a subordinate decision and the basis for it, and that's not alleged here either. So, in one instance, they're arguing that the final policymaker made the decision, yet they don't support it with a practice policy or with a practice or policy or custom. And then on the other hand, they say that, the final policymaker, anything that he said was ratified, yet that wouldn't support the legal definition of ratification. Here, based on the law of the circuit, based on Monell and his progeny, we believe that they did not satisfy Iqbal and Tompley. And for these reasons, we ask that the court affirm the district court's ruling. Thank you, Mr. Reinstein. And we'll hear from Mr. Robertson on rebuttal. If I may, I'd like to point out in the Griffin decision, and I'm reading, a municipality's failure to correct the constitutional offenses, excuse me, constitutionally offensive actions of its employees can rise to the level of a custom or policy. And so Mr. Reinstein says, where's the custom, where's the policy? And Griffin says, if you continue to ignore and fail to correct, that is the custom or policy. If the municipality tacitly authorizes these actions, well, they didn't just tacitly authorize them. The city manager said, go ahead and do it, or displays deliberate indifference. Well, I think that the city manager, knowing that they're on my client's property, that they're excavating material from my client's property, and that they're bringing on contaminated material onto my client's property, shows a deliberate- Show me again that case that you just cited. Griffin versus City of Oklahoma. I was reading, Judge, from Paige. Can you just give us the site, the actual site? Yes, ma'am. It is 261 Fed Third 1295. It's contained in our brief. This case is an exact example of that holding from Griffin. The city manager knew what was going on. It's not a single act. It's an ongoing act. They could have at any point contacted my clients and said, hey, we'd like to continue using your property. They would then have to work out a deal of how to continue to use it or get the heck off the property. But they didn't. They continued to hide it. They knew they didn't own it. They thought they were going to buy it, but ultimately didn't. My clients have been badly damaged, and it reached the constitutional level because of the fact that it's property-involved. They seized the property of my client. They seized material off of my client's property. They gave them no due process. The complaint is a good complaint based on the fact that the two counts have been plausibly set forth. This matter should be reversed and sent back to the trial court. I suspect that because the complaint, as it existed in the trial court, included a lot of other parties that the judge was frustrated and happened to throw the baby out with the bathwater, it's time to put the baby back. I would urge you to reverse this and send it back to the trial judge and let my clients- Counsel, I'm looking at Griffin. I had looked at it because it was cited in your brief earlier, but in paring down, we reiterated, first of all, it wasn't a policy case. It was a custom case. What we reiterated there is our holding from a prior case that, quote, to prove liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or expressed policy, that would be the policy part, is so permanent and well-settled as to constitute custom and usage with the force of law. Can we say that one deprivation to one homeowner is customer usage that's so permanent and well-settled has to come with the force of law? I apologize, Judge Wilson, for going over. But you read further when you're citing from the Brooks case that a municipality's failure to correct the constitutionally offensive actions of employees can rise to the level of a custom or policy if the municipality tacitly authorizes the action or displays deliberate indifference. If we were talking about a single action, somebody walked on the property, did something, walked off, it wouldn't be much different than day-to-day they're receiving reports from B, C, and C talking about how we're on this property, we're taking material off of this property. I think that itself becomes a customer policy in terms of how they're going to operate this contract. It's very difficult to say anything of it. In my mind, it's very difficult to say anything other than that. Thank you for your indulgence, Judge Wilson. I appreciate it. Thank you. All right. Well, thank you, Mr. Robertson and Mr. Reinstein. And I believe that completes our arguments for today. And the court will be in recess until nine o'clock tomorrow morning.